[Cite as *State v. Riley*, 2014-Ohio-2313.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MIAMI COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No.    2013 CA 37 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No.   13-CRB-254 |
| v. | : | |
| | : | |
| THOMAS L. RILEY | : | (Criminal Appeal from |
| | : |  Municipal Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

**O P I N I O N**

Rendered on the 30th day of May, 2014.

. . . . . . . . . . .

ANDREW H. JOHNSTON, Atty. Reg. No. 0088008, Assistant Municipal Prosecutor, Miami County Municipal Court, 201 West Main Street, Troy, Ohio 45373
        Attorney for Plaintiff-Appellee

PAUL R. F. PRINCI, Atty. Reg. No. 0012149, 121 S. Market Street, Troy, Ohio 45373
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.

{¶ 1}    Thomas L. Riley appeals from his conviction and sentence on one count of domestic violence in violation of R.C. 2919.25(A).

{¶ 2}    In his sole assignment of error, Riley contends his conviction "is not supported

by the evidence."

{¶ 3} The record reflects that Riley was found guilty following a bench trial. The State's primary witness was his seventeen-year-old son, the victim.[1] Riley's son testified that he was residing with his father and stepmother when an argument arose regarding chores and the internet. (Tr. at 7). The son became irritated and slammed his bedroom door. According to the son, Riley opened the door, cursed, got on top of him on the bed, and punched him in the face several times with a closed fist. Riley then put his son in a choke hold and dropped him to the floor before telling him to go to bed. (*Id*. at 7-8). The son went to sleep after his father left the room. When he awoke, he discovered that one eye had swelled shut and his face was bruised. (*Id*. at 9). The injuries were noticed by school employees the following day. (*Id*. at 10-11). He was taken to the hospital and prescribed medication for pain and swelling. (*Id*. at 11).

{¶ 4} On cross examination, Riley's son testified that he weighed 154 pounds and was about five feet and three or four inches tall. (*Id*. at 17).The son denied getting in his stepmother's face during the argument about chores and the internet. He denied cursing or slamming his bedroom door more than once. (*Id*. at 20). He also denied trying to hit his father in the bedroom. (*Id*. at 23). The only other prosecution witness was a police officer who spoke to the son at the hospital and took pictures of his injuries. (*Id*. at 32-40).

{¶ 5} After the State rested, Riley's wife Stacy testified as a defense witness. She recounted prior disciplinary problems with Riley's son such as back talking and not wanting to do his chores. (*Id*. at 42). She also testified that the son once pulled back and started pushing and kicking when she tried to grab his face. (*Id*.). Stacy claimed that Riley primarily disciplined his son by grounding him or taking away privileges and that he had not used corporal punishment for

---

[1] Riley's son was seventeen at the time of the incident and eighteen at the time of trial. (Tr. at 15).

years. (*Id*. a 43). With regard to the incident in question, Stacy testified that the son was getting in her face and arguing about using the internet. (*Id*. at 46-47). The son eventually slammed his bedroom door. According to Stacy, Riley then went into his son's bedroom. She followed seconds later to make sure everything was okay. (*Id*. at 48). Upon entering, she saw Riley holding his son and telling him to calm down. Stacy testified that Riley had his arms around his son, who was pushing and kicking. (*Id*.). Riley let go when his son calmed down. Stacy saw no physical injury to the boy, who seemed "fine." (*Id*. at 49). Stacy testified that she did not see the son the following morning. (*Id*. at 50).

{¶ 6}     The next witness was Riley himself. He testified that he was about five feet and five inches tall and weighed 150 pounds. (*Id*. at 57). According to Riley, his son became argumentative on the day in question after being denied internet access because his chores were not done. (*Id*. at 61). Riley testified that his son slammed a bedroom door several times and then got in his face and demanded internet access. (*Id*. at 63). Riley responded by ordering his son to the bedroom. When his son slammed the bedroom door again, Riley followed him. He entered his son's bedroom, put his hand in his son's face, and told him that the door would not be slammed again. (*Id*.). Riley testified that his son then "smacked" his hand. (*Id*.). Riley responded to that act by "smacking" his son on the cheek with an open hand. (*Id*. at 63-64). According to Riley, his son jumped up, kicked him against a bunk bed, and "kept fighting." (*Id*. at 64). Riley responded by restraining the boy until he calmed down. He denied hitting his son with a closed fist. (*Id*.). Riley stated that he did not see his son again that night or the following morning. (*Id*. at 65). On cross examination, he could not explain how his son sustained the injuries depicted in photographs. He speculated that it may have been from the "wrestling around." (*Id*. at 72). Riley acknowledged that

punching his son with a closed fist for the infractions at issue would have been excessive. (*Id*. at 73-74). He simply denied that it had happened.

{¶ 7} The final witness at trial was the son's cousin. He lived at Riley's house and was home during the incident. The cousin confirmed an argument about internet access. (*Id*. at 78). The cousin testified that he saw Riley strike his son with an open hand. He did not see Riley hit the boy with a closed fist. (*Id*. at 79). The cousin stated that he left the room when Riley and his son "started rolling around." (*Id*.). On cross examination, the cousin confirmed that he still resided with Riley (whereas Riley's son no longer did). (*Id*. at 81). The cousin also acknowledged that he did not stay in the bedroom for the entire incident. (*Id*. at 83).

{¶ 8} Based on the evidence presented, the trial court found Riley guilty of domestic violence and sentenced him accordingly.

{¶ 9} On appeal, Riley argues that an open-handed slap to the face constituted reasonable and appropriate parental discipline under the facts and circumstances of this case. Therefore, he maintains that his domestic-violence conviction "is not supported by the evidence."

{¶ 10} Riley's appellate brief fails to make clear whether he is raising a legal-sufficiency or manifest-weight challenge. When a defendant challenges the sufficiency of the evidence, he is arguing that the State presented inadequate evidence on an element of the offense to sustain the verdict as a matter of law. *State v. Hawn*, 138 Ohio App.3d 449, 471, 741 N.E.2d 594 (2d Dist.2000). "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most

favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 11} Our analysis is different when reviewing a manifest-weight argument. When a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 12} With the foregoing standards in mind, we conclude that Riley's conviction is supported by legally sufficient evidence and is not against the manifest weight of the evidence. The trial court found him guilty of violating R.C. 2919.25(A), which provides that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." The testimony of Riley's son, if believed, is certainly legally sufficient to support a finding that Riley violated the statute.

{¶ 13} Nor is Riley's conviction against the manifest weight of the evidence. He argues that he slapped his son once with an open hand and that this act constituted proper parental discipline. We agree that reasonable parental discipline does not violate R.C. 2919.25(A). *State v. Suchomski*, 58 Ohio St.3d 74, 75, 567 N.E.2d 1304 (1991) ("Nothing in R.C. 2919.25(A) prevents

a parent from properly disciplining his or her child."). Here, however, Riley's son testified that his father repeatedly punched him in the face with a closed fist. At trial, Riley acknowledged that such conduct, if it occurred, would not be proper discipline, and we agree.

**{¶ 14}** It is well settled that evaluating witness credibility is primarily for the trier of fact. *State v. Benton*, 2d Dist. Miami No.2010-CA-27, 2012-Ohio-4080, ¶ 7. A trier of fact does not lose its way and create a manifest miscarriage of justice if its resolution of conflicting testimony is reasonable. *Id.* Here the trial court quite reasonably could have credited the son's testimony, which, in light of the boy's injuries, seems to us more believable than Riley's version of events. In any event, the trial court did not lose its way and create a manifest miscarriage of justice.

**{¶ 15}** The assignment of error is overruled, and the trial court's judgment is affirmed.

. . . . . . . . . . . . .

FAIN, J. and DONOVAN, J., concur.

Copies mailed to:

Andrew H. Johnston
Paul R. F. Princi
Hon. Gary A. Nasal